**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ALISON MOE,** | |
| **Plaintiff,** | **Civil Action No.: 2:09-01424** |
| **v.** | **OPINION** |
| **SETON HALL UNVIERSITY, BRIAN B. SHULMAN, Ph. D., JOESPH MONOC, PA-C, JAMES PHILLIPS, Ph. D., ELLEN MENDEL, M-PA, ABC ENTITIES 1-5, JOHN DOES 1-10, (as yet unidentified entities and persons),** | **HON. WILLIAM J. MARTINI** |
| **Defendants.** | |

**MEMORANDUM OPINION**[1]

## I.    INTRODUCTION

On January 29, 2009, Plaintiff, Alison Moe, filed a complaint in Essex County Superior Court against Defendant Seton Hall University (the "University"), and against Brian B. Shulman, Ph. D, Joseph Monoco, PA-C, James Phillips, Ph. D, and Ellen Mendel, M-PA, (the latter four, collectively, the "Individual Defendants"). The complaint was removed to federal court on March 27, 2009, and on April 20, 2009, Defendants submitted a motion to dismiss the complaint in lieu of an answer. However, the motion was terminated when

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the Court's record and to authority cited herein may be inserted. No endorsement of any provider of electronic or other resources is intended by the Court's practice of using hyperlinks.

1

Plaintiff subsequently filed a sixteen count Amended Complaint alleging: violations of due process under federal and state law; negligence; breach of contract; breach of quasi-contract; breach of implied contract; promissory estoppel; breach of the duty of good faith and fair dealing, unjust enrichment; intentional misrepresentation and fraud; intentional infliction of emotional distress; defamation; and tortious interference with prospective economic advantage. Am. Compl. All sixteen counts in the Amended Complaint are brought against all Defendants.

In lieu of an answer to the amended complaint, Defendants have filed a motion to dismiss (the "Motion"), which is presently before the Court.

The Court, for the reasons elaborated below, will **GRANT** in part, and **DENY** in part, Defendants' Motion. Specifically: Count I -- the general due process claim;[2] Count II -- the state due process claim; Count III -- the federal due process claim; Count XIII -- the common law due process claim; Count XIV -- the intentional infliction of emotional distress claim; and Count XVI -- the tortious interference with perspective economic advantage claim will be dismissed in their entirety.

Count IV -- the breach of contract claim; Count V-- the breach of quasi-contract claim; Count VI -- the breach of implied contract claim; Count X -- the breach of the covenant of good faith and fair dealing claim; and Count XI -- the unjust enrichment claim

---

[2] Plaintiff's separate counts in her Amended Complaint are nowhere expressly titled. The Court has associated with each count a theory of liability or cause of action based on its own reading of the count and also based on the briefing of the parties.

will be dismissed against the Individual Defendants, but not against the University. The motion is **DENIED** in all other respects.

## II.   FACTUAL BACKGROUND ALLEGED IN THE AMENDED COMPLAINT

The Amended Complaint alleges that in September of 2003, Plaintiff, Alison Moe, entered Defendant Seton Hall University's three year Physician Assistant ("PA") program. During the first year and part of the second year of Moe's enrolment, she maintained an average grade of an "A." Moe's studies were conducted without incident until one of her instructors, Defendant Mendel, allegedly assigned Moe an arbitrarily low grade for a group research project. Moe further claims that the "C" grade, assigned to Moe was below the "B+" grades assigned to the other members of the group, despite the allegations that Moe was the only member to present the group's project during a mandatory symposium, and Moe received an award for her presentation. Moe complained about the grade to Defendant Monoco, the director of the PA program, but he took no action.

As a result of the Defendants' inaction, the "C" grade was applied to Moe's overall grade point average ("GPA"). However she alleges that her GPA was incorrectly calculated, and as a result of mere arithmetic error, she fell below the minimum 3.0 required to remain in good standing in the PA program. Moe complained to Monoco and other representatives of the University, but again, no action was taken. As a result Moe was unable to graduate on time.

The University allowed Moe to complete her studies on the condition that she retake a

class and complete two clinical rotations while maintaining a "B" average. A written agreement ("the Agreement") was entered into between Moe and the University. Monoco acted on behalf of the University. The Agreement detailed the terms of Moe's conditional re-enrolment into the PA program.

After Moe had been reenrolled into the PA program and at a time when she was serving on a clinical rotation, she requested that she be excused from the rotation for two days in order to attend her own (planned) wedding (which ultimately did not take place). Moe obtained approval from her professors and rotation leaders, and notified the University's administration in compliance with the procedures detailed in the University's student handbook.

Despite meeting all academic objectives conditioned in the Agreement and following University protocol in requesting excused absences, Moe was accused of misconduct by Defendant Monoco, who sought to have Moe dismissed from the PA program. Monoco claimed that Moe's absences from the clinical rotations constituted professional misconduct and a failure to meet the requirements for successful completion of the clinical rotation. But, Moe claimed in her appearance before the Student Performance Review Grievance Committee ("SPRGC") that her absences had been excused. The SPRGC was headed by Defendant Phillips. The Committee refused to accept proof or adduce evidence that Moe had fully complied with school policy and determined that she was guilty of misconduct. Moe appealed the decision to the acting dean, Defendant Shulman, who heard her in a closed

proceeding on January 31, 2007. Moe's appeal was denied by letter dated February 5, 2007, and she was dismissed from the PA program for the alleged misconduct.

Subsequent to her dismissal from the University, Moe attempted to complete her education at other academic institutions. However, these institutions denied her admission upon receiving her transcript from the University, which stated that Moe was dismissed for "academic" reasons as well as "unacceptable professional behavior."

After her dismissal from the PA program and subsequent unsuccessful attempts to complete her education, Moe filed a complaint against Defendants, which has since been superseded by the Amended Complaint, and Defendants brought the instant motion to dismiss.

## III.    STANDARD OF REVIEW

The Defendant's motion to dismiss is brought pursuant to the provisions of Fed. R. Civ. P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level."

*Twombly*, 550 U.S. at 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id*. Furthermore, in order satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. at 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit Guar. Corp. v. White Consol. Indus*., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

## IV.    ANALYSIS[3]

---

[3] The parties do not dispute the presence of diversity jurisdiction. *See* 28 U.S.C. § 1332;

The Motion asserts a number of defenses. This opinion responds to each in turn.

A.    COUNT II -- THE STATE DUE PROCESS CLAIM, AND COUNT III -- THE FEDERAL DUE PROCESS CLAIM

Count II alleges that Defendants denied Plaintiff her procedural and substantive due process rights under the New Jersey Constitution, and Count III alleges that Defendants denied Plaintiff her federal civil rights, including among others, procedural and substantive due process rights under the United States Constitution and under federal statutory law. Generally, procedural and substantive due process rights "protects individuals only against government action." *Biener v. Calio*, 361 F.3d 206, 216 (3d Cir. 2004) (expounding on Fourteenth Amendment protection); *Hernandez v. Don Bosco Preparatory High*, 730 A.2d 365, 372-73 (N.J. Super. App. Div. 1999) (holding that state action is an element of a due process claim under the state constitution). Here the Defendants are to all appearances private, not state, actors. Plaintiff alleges that the University receives "state aid, state funding, and [its] activities [are] entwined with the state and state functions … so as to be considered a state actor," Amend. Compl. ¶ 61, and "[t]he financial ownership, management and control issues to be explored are wholly within defendants' knowledge and possession" entitling Plaintiff to discovery prior to dismissal of these claims. The Supreme Court has held that a "school's receipt of public funds does not [without more] make [its] decisions acts of the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 839 (1982). Here the only concrete state action

---

*Hertz Corp. v. Friend*, No. 08-1107, 130 S. Ct. 1181 (U.S. Feb. 23, 2010) (adopting nerve center approach). The parties do not dispute that New Jersey substantive law applies to this

alleged is that the University receives state aid or funding, and that, standing alone, is insufficient to attribute the University's actions to the government, i.e., to find "state action." Plaintiff's remaining argument, that detailed factual allegations as to state action must await discovery because the facts are "wholly" within Defendants' possession, is precisely the sort of claim that was rejected by the Supreme Court in *Twombly*. If Plaintiff is going to allege a due process claim, she must allege state action, and concrete facts in support of state action, rather than mere formulaic allegations, e.g., the University's "activities [are] entwined with the state and state functions." Amend. Compl. ¶ 61.

   B.   COUNT I -- THE GENERAL DUE PROCESS OR FUNDAMENTAL FAIRNESS CLAIM, AND COUNT XIII -- THE COMMON LAW DUE PROCESS CLAIM

Because this Court sits in diversity jurisdiction, in determining the validity of these counts the Court must look to any on-point holdings of the Supreme Court of New Jersey or, in lieu thereof, it must predict whether the Supreme Court of New Jersey would entertain such theories of liability if presented with the facts alleged here. *Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 91-92 (3d Cir. 2008). Here, there is no on-point holding of the state supreme court; however, there is a fairly recent and well-reasoned opinion by the Appellate Division of the Superior Court. In *Hernandez v. Don Bosco Preparatory High*, 730 A.2d 365, (N.J. Super. App. Div. 1999), the court explained that *public* university students who are disciplined may bring a traditional due process claim, but they may also bring a contract

---

controversy pursuant to *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941).

8

claim. *Id*. at 372-74. Where such students bring a contract claim against their university:

> New Jersey courts have declined to characterize the relationship between student and university as [purely] contractual. In *Mittra v. University of Medicine*, 316 N.J. Super. 83, 719 A.2d 693 (App. Div. 1998), plaintiff was a student who was dismissed from a state university for academic reasons. Plaintiff filed a complaint alleging the student handbook formed contractual obligations which the school breached. We cited *Napolitano* [*v. Trustees of Princeton Univ.*, 453 A.2d 263 (N.J. Super. App. Div. 1982)], rejecting the "rigid application of contractual principles to university-student conflicts involving academic performance," and instead limited the "scope of review to a determination whether the procedures followed were in accordance with the institution's rules and regulations.

*Id*. at 374. Although not crystal clear, this Court understands the Appellate Division to mean that although a public university student after having been disciplined may bring a due process claim or a contract claim, the contract claim is not adjudicated under strict contract principles. In adjudicating such disputes, a reviewing court will turn to additional sources of law, e.g., the law of associations, will show considerable deference to university administrators, and will recognize the unique relationship between a university and it students. The court's analysis then turned to the scope of review in the context of a *private* university student. In that context, the court determined that no traditional due process claim was viable, but the contract claim remained. *Cf. id.* at 375 ("We declined [in *Napolitano*, *supra*] to apply the law of private associations to a *private* university setting" (emphasis added)). The court characterized such a claim as one grounded in "fundamental fairness." *Id.* at 373. The scope of review in such circumstances is limited and is akin to the review of agency action under the arbitrary and capriciousness standard. In other words, a student in a

private university contesting disciplinary proceedings, including expulsion, will not prevail if the university adhered to its own rules, *id*. at 376, the procedures followed were fundamentally fair, *id*., and the decision was based on "sufficient" evidence, *id*. at 375.[4] It is possible that an even more deferential standard might apply where expulsion arises in consequence of alleged academic failure, as opposed to disciplinary proceedings grounded in misconduct. But here the gravamen of the allegations in the Amended Complaint relate to alleged misconduct, not to academic failure. Amend. Compl. ¶ 37 (alleging that the University denominated Plaintiff's conduct as "unacceptable professional behavior").

This Court finds no support in *Hernandez* or other sources of New Jersey law for the proposition that New Jersey Supreme Court would validate a free-standing fundamental fairness claim or law of associations claim on these facts.[5] Rather, this Court predicts that the New Jersey Supreme Court would follow the *Hernandez* court and evaluate contract claims

---

[4] As a formal matter, the holding of the *Hernandez* court, the three-part test described in the main text of this opinion, applies to students in private high schools. However, private university students are entitled to at least that amount of protection via judicial review of disciplinary proceedings, not less. *See, e.g.*, *Hernandez*, 730 A.2d at 375-76.

[5] Even if this Court allowed some amorphous law of associations claim to go forward, the Court doubts that any such claim could support damages, as opposed to mere injunctive relief. *See, e.g*., 2 DAN B. DOBBS, LAW OF REMEDIES § 7.3(5), at 332 (2d ed. 1993). As far as the Court can tell, Plaintiff has put forward no authority where a claimant bringing such a claim prevailed and was awarded monetary relief: the primary relief sought in this litigation. Moreover, to the extent that monetary relief might be available under such a theory, Plaintiff can more easily prevail under her counts asserting contractual liability. *See* Note, *Judicial Control of Actions of Private Associations,* 76 HARV. L. REV. 983, 1087 (1963) (noting "bad faith" requirement where plaintiff sues for compensatory damages for wrongful expulsion from association).

through that prism and in light of the standard announced by the *Hernandez* court. For this reason, Count I, the general due process count, and Count XIII, the common law due process claim are dismissed.

C.     COUNT IV -- THE BREACH OF CONTRACT CLAIM; COUNT V-- THE BREACH OF QUASI-CONTRACT CLAIM; COUNT VI -- THE BREACH OF IMPLIED CONTRACT CLAIM; COUNT VII -- THE PROMISSORY ESTOPPEL CLAIM; COUNT X -- THE BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM; AND COUNT XI -- THE UNJUST ENRICHMENT CLAIM

As explained above, the due process related claims fail. But for the reasons explained therein, the counts grounded in contract or quasi-contract should not be dismissed, notwithstanding that those counts will not be evaluated through traditional contract principles. Whether the Defendants met their contractual duties will be evaluated under the three-part test announced by the *Hernandez* court. *Id*.

Defendants' arguments to the contrary are not convincing. Defendants argue that the Plaintiff fails to identify the "specific [contractual] provisions" breached by Defendants.[6] But Defendants cite *no* law requiring such an allegation at this stage. Under federal notice pleading rules, it is sufficient that Plaintiff put Defendants on notice of the claim: breach of contract and the facts giving rise to that claim. For example, Plaintiff alleges that the University failed to comply with its own rules in regard to grading, personal leave, and failed to follow its own policies for handling grievances and complaints. That is sufficient notice

---

[6] Defendants' brief seems to admit that a "signed" contract between the parties exists. *See* Defendants' Opening Br. 25 (asserting that Plaintiff signed the "contract" or "learning

under the rules. Fed. R. Civ. P. 8(a)(2). Defendants also argue that Plaintiff's contract claim

is based upon a student manual and therefore fails as a matter of law. Defendants' position

inaccurately describes the gravamen of the Amended Complaint and, in the Court's view,

misstates the law. Moe alleges that she entered into a written Agreement with the University

when she reentered the program after her GPA fell below the required level (at least as

calculated by Defendants). That Agreement may be enforced quite apart from any provisions

of the student manual. As to the student manual, New Jersey case law does not preclude

courts from looking to such sources to determine the scope of the contractual relationship

between a student and her school. *See, e.g.*, *Romeo v. Seton Hall Univ.*, 875 A.2d 1043, 1050

(N.J. Super. App. Div. 2005) ("A contractual relationship cannot be based on *isolated*

provisions in a student manual." (emphasis added)); *Napolitano v. Trustees of Princeton*

*Univ.*, 453 A.2d 263, 272 (N.J. Super. App. Div. 1982) ("The student pays a tuition which

might, in some instances, represent a contractual consideration."). To the extent that *Mittra v.*

*Univ. of Medicine & Dentistry of N.J.*, 719 A.2d 693 (N.J. Super. App. Div. 1998), is

contrary authority, i.e., in rejecting use of a manual to determine the scope of the relationship,

that case was expressly limited to academic performance, by which the Appellate Division

meant an evaluation of the student's "ability to master the required curriculum." *Id.* at 698.

Here, by contrast, the gravamen of the dispute does not relate to mastery of academic

materials, but relates to whether or not Moe complied with the procedures for taking leave

---

agreement").

and whether or not the University complied with its own procedures for grading and for adjudicating grievances. Although "[r]igid application of contract principles to controversies concerning student academic performance would tend to intrude upon academic freedom and to generate precisely the kind of disputes that the courts should be hesitant to resolve," *id.*, by contrast, the sort of dispute alleged here does not raise those policy concerns. Finally, Defendants argue that even if the contractual theories are valid, they should be dismissed because Plaintiff has been given a fair procedure. Plaintiff alleges otherwise and points to specific defects in the procedures used prior to her being expelled. Amend. Compl. ¶ 38. At this stage, that is all Moe must do.

Accordingly, Defendants' motion to dismiss the breach of contract related claims is denied. It appears that Count XI – the unjust enrichment claim is duplicitous with the Count V – breach of quasi-contract. "Unjust enrichment is not an independent theory of liability [under New Jersey law], but is the basis for a claim of quasi-contractual liability [i.e., restitution]." *Goldsmith v. Camden County Surrogate's Office*, 975 A.2d 459, 463 (N.J. Super. App. Div. 2009). But, as this point was not briefed by the parties, the Court will not dismiss Count XI at this time. *But see County of Essex v. First Union Nat. Bank*, 891 A.2d 600, 609 (N.J. 2006) (stating that "[i]t is obvious that the County's *cause of action for unjust enrichment/disgorgement* is an equitable claim" in the context of allegations relating to bribing a public official (emphasis added)).

D.     COUNT XII -- THE NEGLIGENCE CLAIM

In challenging Plaintiff's claim arising from the negligent computation of her GPA, Defendants only argue that courts should not interfere with grading determinations best left up to academic institutions. *See Swidryk v. St. Michael's Med. Ctr.*, 493 A.2d 641, 644 (N.J. Super. App. Div. 1985). Defendants rely on cases dealing specifically with challenges to evaluators' discretion in grading the students' academic work. *See, e.g.*, *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214 (1985) (addressing a medical student's dismissal from the program for failing a prerequisite examination); *cf. Board of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78 (1978) (addressing a medical student's dismissal for poor performance during clinical rotation).

In this case, however, Plaintiff's negligence claim relates not to the unfavorably low grade she received from Defendant Mendel, but to the manner in which her GPA was (allegedly) improperly calculated in computing her overall GPA. Am. Compl. ¶ 21 (alleging that the "University misapplied the grading protocol and policies to obtain plaintiff's overall grade point average, using policies for other departments, school and divisions instead of the grading policies … for the PA program"). *Universities are not negligence-free zones in relation to their students.* As the *Swidryk* court explained "[a]s a general rule courts will not interfere with purely academic decisions of a university. The New Jersey courts should not be required to sit in *day to day* review of the academic decisions of a graduate medical education program." *Id.* at 606 (emphasis added). But outside of that limited context, where plaintiffs do not seek judicial review of day-to-day grading decisions, the mundane law of

14

negligence still applies. Because Plaintiff is alleging that the Defendants miscalculated her overall GPA under then extant University polices and that that determination is readily calculable, i.e., particular grades and discretionary evaluations of work are not in dispute, this Court can hear Plaintiff's negligence claim.

E.    COUNT VIII -- INTENTIONAL MISREPRESENTATION, AND COUNT IX -- COMMON LAW FRAUD

"The Court construes a claim of 'intentional misrepresentation' as one for fraud." *Boyko v. Am. Int'l. Group, Inc.*, Civil Action No. 08-2214, 2009 WL 5194425, at *3 (D.N.J. Dec. 23, 2009) (citing *Jewish Ctr. of Sussex County v. Whale, 432 A.2d 521*, 524 (N.J. 1981)). The elements of fraud include: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 260 (N.J. 2005). Plaintiff makes three primary allegations in regard to the purported misrepresentation.

> [D]efendants omitted to advise plaintiff of the material fact [1] that the student handbook setting forth the right to take time off by following protocol, did *not* and *was not applicable* to plaintiff under the terms of her specific contract; [2] that defendants Shulman, Monoco, and Phillips, *did not intend* to apply the policies … of the school pertaining to discipline to plaintiff; [and] [3] that plaintiff *would not be* accorded the same rights [and] privileges as all other students matriculated into the PA Program.

Amend. Compl. ¶ 104 (emphasis added). Because Plaintiff's allegations here make use of *negatives* in regard to a purported *omission* it is very difficult to parse. There seems to be two possibilities. If as a legal matter the handbook did not apply to Plaintiff, then Defendants'

15

omitting to tell Plaintiff that it did not apply was not a *mis*representation. On the other hand, if the policies in the handbook did apply to Plaintiff, then Defendants' *present intent* not to apply the handbook (as alleged here) to Plaintiff was a material misrepresentation by omission. Such a claim sounds in promissory fraud. *See Protocol Elecs., Inc. v. Transolutions, Inc*., Civil Action No. 03-4162, 2005 WL 1106132, at *6 (D.N.J. April 29, 2005) (explaining that under Illinois law, "[p]romissory fraud is a false representation of intent concerning future conduct, *such as a promise to perform a contract when there is no actual intent to do so*." (quotation marks omitted, emphasis added)); Ian Ayres & Gregory Klass, *Promissory Fraud*, 78 N.Y.S. BAR J. 26, 27 (May 2006) ("Breach of contract is not fraud. But when the breaching party never intended to perform in the first place, the promise is fraudulent, plain and simple. Promisees have a right to think that they are bargaining for performance, not an action for breach of contract."). Promissory fraud is an obscure cause of action. *Shogen v. Global Aggressive Growth Fund, Ltd*., Civil Action No. 04-5695, 2007 WL 1237829, at *13 n.12 (D.N.J. April 26, 2007). This Court's research has not found any express discussion of this cause of action by any New Jersey state court. The *Shogen* court applied promissory fraud as a matter of New Jersey law, but dismissed the count on the merits at summary judgment. It appears that the majority rule among the states is to allow a cause of action for promissory fraud. *See* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 109, at 764 (5th ed. 1984) (stating that the "prevailing" view is to permit actions of promissory fraud); R. Alston Hamilton, *Tennessee's Long-Awaited*

16

*Adoption of Promissory Fraud*, 59 TENN. L. REV. 325, 337 (1992) (same). Dicta in New Jersey state court appellate opinions suggest that the New Jersey Supreme Court would adopt this position. *See, e.g.*, *Van Dam Egg Co. v. Allendale Farms, Inc.*, 489 A.2d 1209, 1211 (N.J. Super. App. Div. 1985) ("A promise to pay in the future is fraudulent if there is no present intent ever to do so.").[7]

Given an absence of an on-point holding of the New Jersey Supreme Court and briefing from the parties on this issue, the Court will not dismiss these counts at this stage.

F.      COUNT XIV -- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ("IIED")

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." *Buckley v. Trenton Sav. Fund Soc.*, 544 A.2d 857, 863 (N.J. 1988). Defendants argue that Plaintiff has failed to plead a valid IIED claim. The Court agrees. In opposing Defendants' motion to dismiss the IIED count, Plaintiff's opposition brief points to no allegations in the Amended Complaint. Not one. Rather, Plaintiff restates the allegations of the Amended Complaint as follows: "[T]he claims here involve not only destroying the professional reputation of a young woman about to embark on her career, but also ruining her career and destroying her chance to become a professional in her chosen field. Not to mention the

---

[7] Defendants cite *Boyes v. Greenwich Boat Works, Inc.*, 27 F. Supp. 2d 543, 551 (D.N.J. 1998), for the proposition that where a plaintiff brings a contract action, the tort of misrepresentation will be dismissed. *Boyes'* holding was expressly tied to the application of the Uniform Commercial Code, not to contract law generally. The UCC is not at issue here.

significant financial losses in tuition and related costs by a plaintiff with little resources." Opp'n Br. 37. Nothing here states with any clarity that Plaintiff suffered any emotional distress, much less severe emotional distress.

> G.    COUNT XV -- DEFAMATION

To assert a claim for defamation, New Jersey courts require the plaintiff to allege that: (1) a statement was made; (2) which was false; and was (3) communicated to a third party; with the result of (4) injury to the plaintiff's reputation. *See Lynch v. N.J. Educ. Ass'n*, 735 A.2d 1129, 1135 (citing RESTATEMENT (SECOND) OF TORTS §§ 558, 559 (1977)). The *Restatement* further specifies that the publication of the defamatory statement must be made in at least a negligent manner. RESTATEMENT (SECOND) OF TORTS § 558 (1977). In evaluating the second prong, New Jersey courts have held that "[s]tatements of opinion, like unverifiable statements of fact, generally cannot be proved true or false…. Although they do not enjoy a wholesale defamation exemption, opinion statements do not trigger liability *unless they imply false underlying objective facts*. *Lynch*, 735 A.2d at 1137 (emphasis added).

The Amended Complaint alleges that Defendants defamed Plaintiff by submitting a transcript stating that Plaintiff was "expelled for academic cause and had exhibited unprofessional conduct." Am. Compl. ¶ 161.

Defendants argue that the statements in the transcript relating to Plaintiff's dismissal fail to satisfy the requirements for defamation because they were opinion "that cannot serve as factual predicate for a claim of defamation." Opening Br. 30. However, Defendants' broad

characterization ignores the exception for mixed opinion; i.e., statements clearly implying objective underlying facts. *Lynch*, 735 A.2d at 1137. The statements regarding Plaintiff's expulsion constitute mixed opinion because they imply the fact that Plaintiff's academic performance was below the minimum standard for her to remain enrolled in the PA program and that she did in fact conduct herself in a manner that could be characterized as unprofessional. These implied facts are facts specifically alleged to be false. Accordingly, at this stage, the statements in the transcript regarding the grounds for Plaintiff's dismissal sufficiently allege a defamation claim.

### H.   COUNT XVI -- TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

In order to state a *prima facie* claim for tortious interference with prospective economic advantage under New Jersey law, a complaint must allege: "(1) a protected interest, not necessarily amounting to an enforceable contract; (2) defendant's intentional interference without justification; (3) a reasonable likelihood that the benefit plaintiff anticipated from the protected interest would have continued but for the interference; and (4) resulting damage." *Jenkins v. Region Nine Housing Corp.*, 703 A.2d 664, 667 (N.J. Super. App. Div. 1997). Importantly, this claim must be made against a non-party to the interest creating relationship. *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 37. (N.J. 1989).

Plaintiff argues that the interest creating relationship was created by Defendant Monoco, *acting on behalf of the University*, in signing the learning agreement, and that the

remaining Individual Defendants, Shulman and Phillips, interfered with that interest (her continuing education and graduation) when they wrongfully disciplined and expelled her. However, Shulman and Phillips were not outsiders to the Defendant University-Plaintiff Moe relationship. Nor is there any allegation that Shulman or Phillips were acting in pursuit of their own interests or on a frolic and, thus, outside of the scope of their authority (although Plaintiff disputes that these Defendants gave her grievance a full and fair review). Given that all the Individual Defendants were acting on behalf of the University, these Defendants cannot be considered non-parties to the interest creating relationship.

Therefore, Plaintiff's claim of tortious interference must fail.

I.      CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

Plaintiff has included, Brian B. Shulman, Ph. D, Joseph Monoco, PA-C, James Phillips, Ph. D, and Ellen Mendel, M-PA, individually as defendants in this action. Defendants argue that all claims against the Individual Defendants should be dismissed because the Amended Complaint specifically alleges that Defendants were acting within the scope of their employment within the University.

Under New Jersey law, "an officer [or agent] who causes his corporation to breach a contract for what he conceives to be the best interest of the corporation does not thereby incur personal liability." *Zeiger v. Wilf*, 755 A.2d 608, 622 (N.J. Super. App. Div. 2000). Because the Amended Complaint fails to allege that the Individually Defendants' interactions with the Plaintiff with regard to the breach of contract claims were made with anything but

the best interests of the University in mind, Plaintiff's contract related claims (excepting the tort of promissory estoppel), i.e., Counts IV, V, VI, X, and XI, against the Individual Defendants must fail.

However:

[A] director or officer who commits a tort, or who directs the tortious act to be done, or participates or cooperates therein, is liable to third persons injured thereby, even though liability may also attach to the corporation for the tort. Corporate officers are liable to persons injured by their own torts, even though they were acting on behalf of the corporation and their intent was to benefit the corporation.

*Charles Bloom & Co. v. Echo Jewelers*, 652 A.2d 1238, 1243 (N.J. Super. App. Div. 1995).

"[T]he essential predicate for application of the theory is the commission by the [entity] of tortious conduct, participation in that tortious conduct by the [entity's] officer [or agent] and resultant injury to the plaintiff." *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 275 (N.J. 2002). In regard to the tort claims (including promissory estoppel), the Individual Defendants may be liable. Therefore, these claims against the Individual Defendants will not be dismissed at this time.

## V.    CONCLUSION

For the reasons elaborated above, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion. Specifically: Count I -- the general due process claim; Count II -- the state due process claim; Count III -- the federal due process claim; Count XIII -- the common law due process claim; Count XIV -- the intentional infliction of emotional distress claim; and Count XVI -- the tortious interference with perspective economic advantage claim are

dismissed in their entirety.

Count IV -- the breach of contract claim; Count V-- the breach of quasi-contract claim; Count VI -- the breach of implied contract claim; Count X -- the breach of the covenant of good faith and fair dealing claim; and Count XI -- the unjust enrichment claim are dismissed against the Individual Defendants, but not against the University.

The motion is **DENIED** in all other respects.

An appropriate order accompanies this memorandum opinion.

s/ William J. Martini

**DATE: April 20, 2010**                    **William J. Martini, U.S.D.J.**